## Case No. 14,034.

### In re TIFFT.

[19 N. B. R. 201.] ¹

District Court, S. D. New York. May 2, 1879.

BANKRUPTCY—JURISDICTION—SUMMARY RELIEF—
ATTACHMENT IN STATE COURT—INJUNC-
TION—DISTRICTS.

1. Any district court in the United States may, in the exercise of its ancillary jurisdiction, and in aid of the court in which the proceedings are pending, grant injunctions, stay proceedings, enforce the provisions of composition resolutions, or administer other summary relief as a court in bankruptcy. as to persons or property within the district, if the relief sought is such as the court in which the proceedings are pending would grant if the persons or property to be affected were within reach of the process of that court, provided that court is disabled from giving the same relief by reason of the persons or property not being subject to its process.

2. After the filing of a petition in bankruptcy no creditor can acquire a lien by attachment, judgment. and levy. or otherwise, on the property of the debtor which belonged to him at the time of the filing of the petition. The commencement and pendency of composition proceedings make no difference in this respect, and give the creditor no right to obtain a lien which he would not otherwise have had.

3. The bankrupt, on February 11. 1878. filed a voluntary petition. and also a petition in composition in the United States district court for the Eastern district of New York. The composition was duly accepted. and was confirmed and ordered to be recorded on May 21, 1878. The bankrupt was adjudicated April 18, 1878, but no assignee was appointed. After the petition was filed. a creditor residing in the Eastern district of New York. whose name and address and the amount of whose debt appeared

¹ [Reprinted by permission.]

on the schedule, commenced an action against the bankrupt, and caused an attachment to be issued to the sheriff of the city and county of New York, who thereupon attached certain goods in the store of the bankrupt. Judgment was rendered in said action in favor of the creditor on the 18th of April, 1878, and an execution was on the same day issued to said sheriff, who levied on the goods attached. On an application for an injunction to stay the sale, *held*, that the creditor acquired no lien on the property by his attachment, judgment, and levy; that the case was clearly one in which the court of the Eastern district would stay proceedings if the officer were within that district; that, while this court could not restrain the creditor, because it was a resident. and within reach of the process of the court of the Eastern district, yet an injunction staying the proceedings of the sheriff until the question of the bankrupt's discharge shall be determined was within the power of the court, and should be granted.

[In the matter of Alanson H. Tifft, a bankrupt. For prior proceedings in this litigation, see Cases Nos. 14,029–14,033, 14,035,. and 14,036.]

H. E. Davies and C. H. Phelps, for creditor.

A. C. Aubrey and L. Henry, for bankrupt.

CHOATE. District Judge. This is a petition of Alanson H. Tifft, who has filed a voluntary petition in bankruptcy in the Eastern district of New York, asking an injunction against the sheriff of the county of New York to restrain the sale on execution of certain property of the bankrupt on which the sheriff has made a levy, and for other relief. The petition in bankruptcy was filed February 11, 1878. On the same day the debtor filed a petition in composition, and thereupon a meeting of creditors was called. in pursuance of the statute, to consider the same. The composition proposed was 33⅓ per cent., for which notes were to be given, payable in six, nine, twelve, fifteen, and eighteen months. The proposed composition was duly accepted by the creditors, and was confirmed by the court, and ordered to be recorded May 21, 1878. Among the creditors whose names and addresses and the amount of whose debt were mentioned in the schedule produced at said meeting was the Iron Clad Manufacturing Company, a corporation organized under the laws of New York. and having its principle office or place of business in the city of Brooklyn, in the Eastern district of New York. The petitioner was adjudicated a bankrupt April 18, 1878. No assignee has been appointed. On the 10th of April, 1878. the Iron Clad Manufacturing Company commenced an action in the marine court of the city of New York against the bankrupt, procured a warrant of attachment therein, and under the warrant the sheriff of the county of New York attached certain goods of the bankrupt in the store at which he transacted his business. On the 18th of April the corporation recovered judgment in said action for eight hundred and seventeen dollars and ninety-three cents. An execu-

tion was on the same day issued thereon, and the sheriff made a levy on the same goods. No sale has yet been made under the execution. The relief asked in the petition is that the corporation and the sheriff be enjoined from enforcing the execution or judgment, or from removing, disposing of, or in any manner interfering with the property so levied on, or any other property belonging to the said petitioner, until the question of his composition or discharge shall be lawfully determined, and until the further order of this court, and for such other or further order or relief as the court shall deem equitable or proper. It appears by affidavit put in by respondent that the corporation violated no injunction of the bankrupt court in entering its judgment and issuing execution, and making its levy thereunder, and that the levy was made before the order of adjudication was entered on the 18th day of April.

I think it must be regarded now as settled by authority that the district courts of the United States can exercise the jurisdiction conferred upon them by the law, not only in the district where the original petition is filed, but in any district, when the exercise of such jurisdiction is essential to the complete and full execution of the bankrupt law, of 1867 [14 Stat. 517], and when the power of the court in which the original petition is filed fails because the persons or property against whom the relief to which a party is entitled is sought are beyond the limits of the district, and so cannot be reached by its process. While the particular applications of this principle have generally been on proceedings to collect or receive assets, yet the reasoning of the court is not limited to that single matter, but extends to all other proper relief. The theory of the decisions is that congress intended to provide ample machinery for the administration of the law throughout the United States. Sherman v. Bingham [Case No. 12,762]; Lathrop v. Drake, 91 U. S. 516. See, also, M'Gehee v. Hentz [Case No. 8,794]. When, therefore, by an amendment of the bankrupt law, the provisions relative to composition were adopted, the same power and jurisdiction of the district courts throughout the United States attached to these new proceedings; for they are in every sense proceedings in bankruptcy as truly as the proceedings theretofore allowed and prescribed by the bankrupt law. This court may, therefore, in the exercise of this ancillary jurisdiction, and in aid of the district court of the Eastern district, as to persons and property within this district, grant injunctions, stay proceedings, enforce the provisions of composition resolutions, or administer other summary relief as a court of bankruptcy in a case pending in the Eastern district, if the relief sought is such as that court would grant if the persons or property to be effected were within the reach of the process of that court; provided, of course, that court is disabled from giving the same relief by reason of the persons or property not being subject to its process.

The questions therefore to be determined are whether the bankrupt would be entitled to the relief sought if the persons and property against which it is sought were in the Eastern district, and whether the district court in the Eastern district is unable to reach the same effectually by its own process.

As regards all relief sought against the creditor, the Iron Clad Manufacturing Company, the prayer of the petitioner must be denied, because upon the petition it appears that this corporation has its principal place of business in the Eastern district, and, in the absence of any averment or proof to the contrary, it must be presumed that the proper officers through whom the coercive power of the court must be exercised are within the reach of its process.

It is, I think, beyond dispute that, on the admitted facts in this case, the Iron Clad Manufacturing Company is bound by the composition, and that it did not, and could not, by the alleged attachment and levy on the bankrupt's property, obtain any lien thereon. The statute declares that "the provisions of a composition accepted by such resolution in pursuance of this section shall be binding on all the creditors whose names and addresses and the amount of the debts due to whom are shown in the statement of the debtor produced at the meeting at which the resolution shall have been passed, but shall not affect or prejudice the rights of any other creditors." The same section provides "that, in all cases in bankruptcy now pending by or against any person, whether an adjudication in bankruptcy shall have been had or not, the creditors of such alleged bankrupt may, at a meeting, etc., resolve that a composition proposed by the debtor shall be accepted in satisfaction of the debts due to them from the debtor"; and further, that the value of the debts of secured creditors above the amount of such security, to be determined by the court, shall, as nearly as circumstances admit, be estimated in the same way, and creditors whose debts are fully secured shall not be entitled to vote upon or to sign such resolution without first relinquishing such security for the benefit of the estate.

It seems to me too plain for argument that the creditors referred to as those who may meet and accept the composition are the same class of persons who in the bankrupt law are designated as the creditors who have the right to prove their debts and share in the estate of the bankrupt if administered through an assignee under the direction of the bankrupt court,—namely, those who are creditors at the time of the filing of the petition in bankruptcy,—and that the secured creditors here referred to are creditors who at

that point of time held security by mortgage, pledge, or other valid lien on the estate, real or personal, of the bankrupt; and that no creditor not then having such security can, either by the voluntary act of the bankrupt, or through attachment or levy, acquire any lien on the estate of the bankrupt, so as to be, within the meaning of this section, a secured creditor for the purposes of the composition. It is insisted, on behalf of this creditor, that, even after a voluntary petition in bankruptcy is filed, the title to the property still is in the bankrupt; that neither the filing of the petition nor the pendency, if no assignee is appointed, of the composition proceedings takes away the right of the creditor to sue the bankrupt and attach his property; that, unless restrained by injunction, a creditor so suing and attaching and levying becomes a secured creditor if his attachment or levy is made before the composition resolutions have any validity, which by the act is not till they are confirmed and recorded, and therefore, being a secured creditor, he need not, and is not at liberty to, take part in the meeting, nor bound thereby; that the composition does not, like an assignment, relate back to the time of the filing of the original petition in bankruptcy, but by the express provisions of the composition section has no validity till accepted and confirmed by the court. It is further argued that this debtor, although he filed his petition as a bankrupt, did not procure an order of adjudication thereon till April 18th, after this levy was made, and therefore was not entitled to an injunction against his creditors to stay their suits, as it has been determined in this case, and hence it is argued that the creditor had a perfect legal right, by his diligence in suing, to get this security by attachment and levy on the bankrupt's property.

It is true that it has been held that the filing of a voluntary petition in bankruptcy does not divest the bankrupt of the title to his property. Hampton v. Rouse [22 Wall. (89 U. S.) 263]. It has been also held in this case that, while a voluntary bankrupt declines to be adjudicated, he is not in a position to ask the protection of the court against suits by his creditors. In re Tifft [Case No. 14,031]. But there is nothing in these cases, or in any other cited by the learned counsel, which holds or gives any support to the position here taken that, after the filing of a voluntary petition, a creditor who was such at the time of the filing of the petition can acquire any lien or security whatever by attachment, judgment, and levy, or otherwise, in the property of the debtor, which belonged to him at the time of the filing of the petition. If there is one thing certain in the construction of the bankrupt law, it is that no such lien can be acquired. The law carefully preserves all existing liens,— that is, existing at the time of the commencement of the bankruptcy proceedings,—excepting only attachments made within four

months before that time. This very exception shows conclusively that it was not intended that any creditor should acquire any lien by an attachment after that time, and if it be said that it is not so expressly provided in the bankrupt law, the answer is that it is so unmistakably to be implied from its terms that an express prohibition was wholly unnecessary. The obvious purpose of the law was to liquidate the debts of the bankrupt as of that point of time, and distribute all his property as it then was, subject to existing liens other than attachments of less than four months, equally among all his unsecured creditors, according to the amounts then due to them, respectively. While the title to the property is not divested until appointment of an assignee and a formal assignment to him, the bankrupt becomes at once disqualified to deal with his estate. It passes in his hands, unless taken from him by the court by warrant, or through a receiver, under the immediate protection of the bankrupt court, and the interests of creditors as cestuis que trust at once attach to it, and his control over it is restricted to acts done as trustee for the creditors, and those of a very limited character and extent. In re Vogel [Case No. 16,983]. While the personal exemption of the bankrupt from suits may depend upon his being an adjudicated bankrupt, the exemption of his property from any newly accruing rights of creditors by way of security, and the power and duty of the court to distribute it among the creditors, are the very fundamental principles of the act. The distinction is very plain between the personal exemption of the debtor from suits and the exemption of the estate from further liens. The cases of Wilson v. City Bank, 17 Wall. [84 U. S.] 473, and Clark v. Iselin, 21 Wall. [88 U. S.] 360, cited for the creditor, have no bearing on the question at all. Those decisions relate exclusively to liens existing before the commencement of bankruptcy proceedings. The same is true of In re Clapp [Case No. 2.785], and In re Shields [Id. 12,784]. They have no bearing on this case whatever. The case of Johnson v. Bishop [Id. 7,373], also has no bearing on this question. In that case the defendant, a sheriff, had attached property of a debtor. The debtor afterwards filed his petition in bankruptcy. The assignee in bankruptcy, being appointed, brought an action of detinue in the district court of the United States for the goods attached. That court dismissed the suit for want of jurisdiction, and the case came up before the circuit court on review. The question discussed was whether such an action would be based on or necessarily require the taking of the property from the possession of the sheriff by the marshal, and it was held that the action would not lie. It will be seen that the question did not nor could arise, whether a valid attachment could be made after the filing of a voluntary petition in bankruptcy.

The commencement and pending of composition proceedings make no difference in this respect, and give the creditor no right to obtain a lien which he would not have otherwise had. The statute allows these proceedings for composition, whether there has been an adjudication or not. It is said that this power to bind a dissenting minority being in derogation of common right, the statute giving the power should be strictly construed, and no doubt this suggestion, properly applied, has some force; but the composition statute is engrafted upon the bankrupt law as an amendment, and must have a fair and reasonable construction as constituting a part of a single system of law. It cannot surely be held that the mere fact that composition proceedings are instituted, which are expressly stated in the act to be of no validity till they are completed by acceptance or compromise, throws open the property of the bankrupt meanwhile to a race of diligence as between the very creditors who, if the composition is accepted, will be bound thereby. This would be a construction which would subvert the very purpose for which the composition is allowed, and defeat its intended equal distribution of a stipulated percentage among the creditors named in the schedule. The composition proceedings, therefore, instead of furnishing a reason which did not exist before for allowing an attachment after the filing of the petition, furnish a new ground for holding that no such attachment was intended to be allowed. It has been recently held by Judge Woods that, even after the confirmation of a composition, and the debtor's failure to comply with its terms, the court has power under Rev. St. § 2806, to stay suits of creditors. In re Bayly [Case No. 1,144]. The reasoning of that case is conclusive that the pendency of composition proceedings does not enlarge the rights of creditors to acquire liens on the debtor's property after the filing of a voluntary petition. The right that a creditor not bound by the composition may have after the confirmation of the composition, from the benefits of which he is excluded, either in the way of carrying on his suit, or reaching property which the resolutions of composition have remanded to the uncontrolled custody and disposal of the bankrupt, is not now in question. The position of such a creditor may be such that, by the common action of his debtor and the other creditors, new rights in this respect arise, but we have now to do with a creditor who is bound by the composition. As to him there can be no doubt that the proceeding in bankruptcy is still pending, so long as the composition is not paid, or upon the failure of the composition, till the question of the bankrupt's discharge has been determined. In re Bayley, ubi supra.

It is entirely clear, therefore, that the Iron Clad Manufacturing Company could not acquire any lien by its attachment and levy, and that, as against it, the court is bound to enforce the compromise by all orders it can lawfully make for that purpose; that, under the power of the court to stay proceedings in suits brought by creditors pending the determination of the question of the bankrupt's discharge, now that the bankrupt has been adjudicated, the court can stay the corporation and the sheriff from proceeding further under the execution.

It appears by the petition, and is not denied, that the sheriff has withdrawn his keeper. There is no need, therefore, of any proceeding to take the goods from the sheriff, nor to decide the question whether, so far as the sheriff is concerned, this could be done otherwise than by a proper action in the state court, or by some proceeding in the suit on which the execution issued; nor would it be proper for the court to express any opinion as to the relief which the bankrupt may have against this creditor in the Eastern district of New York, if any, by way of compelling them to release this pretended security, in order to enable the bankrupt to carry out his composition. An injunction staying the sheriff from any further proceeding under his execution, which is plainly within the power given to the court under Rev. St. § 5196, will effectually prevent the recapture of the goods. They are now in the possession of the bankrupt, subject to no lien, and by favor of this creditor.

The only remaining question is whether this relief could be granted by the district court of the Eastern district. In the case of In re Hirsch [Case No. 6,529], it was held to be a matter of serious doubt whether an injunction, even as against a creditor who is a party to the proceeding, could be effectually issued and served out of the district. In the case of In re Richardson [Id. 11,774], while this doubt was recognized, it was held that a district court in a district other than that in which the original petition was filed had no ancillary jurisdiction to issue an injunction staying the proceedings of creditors within its jurisdiction, and beyond the jurisdiction of the court in which the original petition was filed; and it was suggested that, as against suits thus carried on out of the reach of the district court in which the original petition was filed, the bankrupt and the other creditors who may suffer thereby are practically remediless. The case of Markson v. Heaney [Case No. 9,098], approves the views expressed in In re Richardson, and recognizes the same possible failure of justice, unless there should be an amendment of the bankrupt law, from the inability to extend the process of the court beyond the limits of the district. This whole subject, however, was carefully reviewed in Sherman v. Bingham (ubi supra), and, while the opinion was expressed that process of each court is limited to the territory of its particular district it was distinctly held that all other district courts throughout the United

States have ancillary jurisdiction in the same cases sitting in bankruptcy within their respective districts. Thus, it is said: "Judges of the district court must sit, undoubtedly, in the respective districts for which they are respectively appointed, and no doubt is entertained that the process of the court in proceedings in bankruptcy cases is restricted to the territorial limits of the district; but the language of the first section of the bankrupt act, describing the jurisdiction of the district courts sitting as courts of bankruptcy, is that they shall have original jurisdiction in their respective districts in all matters and proceedings in bankruptcy; showing, unquestionably, that they can only sit and exercise jurisdiction in their own districts. But the limitation that the proceedings in bankruptcy must in all cases be pending in that district is not found in that clause of the first section of the act," and, apparently referring to the cases cited above of In re Richardson and Markson v. Heany [supra], the court further says: "Contrary decisions have been made by several of the district judges, and in one case by a circuit judge; but it must suffice to remark, in respect to those decisions, that the reasons assigned in support of the conclusions do not appear to be satisfactory. They assume, what is not correct, that the jurisdiction of the district court ·is confined to the. district in which the proceedings shall be pending. Such an expression is contained in the first clause of the second section of the act, which describes the revisory power of the circuit courts, but it is not contained at all in the first section of the act, and courts of justice have no right to enact such an amendment."

This case and its approval by the supreme court of the United States must be taken, therefore. to have set at rest the doubts that before existed on these points, and it is sufficient authority for the position—First, that the court of the Eastern district cannot effectually enjoin the sheriff of the county of New York, because the process by that court does not run out of the district; and, secondly, that any other district court of the United States may, in a case pending in the Eastern district, exercise ancillary jurisdiction in the same case over persons within reach of its own process, provided the relief sought properly falls within the first section of the bankrupt act. That jurisdiction extends, among other matters, to "the adjustment and various priorities and conflicting interests of all parties to the marshalling and disposition of all the different funds and assets, so as to secure the rights of all parties, and the due distribution of the assets among all the creditors, and to all acts, matters, and things to be done under and in virtue of the bankruptcy." The power to stay suits by creditors. given by the 21st section of the bankrupt act (Rev. St. § 5606). and the power to enforce composition. are not expressly confined to the district court of the district

where the petition is pending. They are therefore powers which any district court, in the due exercise of this ancillary jurisdiction, may properly exercise. In this case, therefore, I have no doubt of the power and duty of this court to enjoin the sheriff from any further proceedings under the execution. .

The case is clearly one in which the court of the Eastern district would stay proceedings if the officer were within the district. The suit on the part of the creditor is a most clearly unlawful attempt, in direct defiance of the rights of the other creditors, and of the bankrupt, and in violation of the agreement by which he is bound to make good, by legal proceedings, a pretended lien which has no existence in fact or in law.

Injunction granted against the sheriff, staying all further proceedings till the question of the discharge of the bankrupt shall have been determined, without prejudice to any other proceedings in this or any other court for other relief.

[For subsequent proceedings in this litigation, see 11 Fed. 463.]